First of all, I'd like to express my gratitude for your hearing this case. I note that this is the first hearing in this case. This case concerns an important procedural matter as regards the litigation of claims brought under Title III of the Americans with Disabilities Act. It also relates to procedure in general, the application of Rule 12b-1. Especially since the Court and the appellants or other appellees say that there's no heightened pleading standard that's been adopted and that it doesn't just relate to serial ADA litigants. Specifically, that issue is, what burdens are incumbent upon which parties when a Rule 12b-1 motion is filed? It would seem that this case, this issue has been already decided by this Court several times. Most recently, it was addressed in Doe v. Holy See, decided by this Court this year. The site is 557 F3rd 1066, and the page site is 1073. This Court's precedent shows that where jurisdiction and the merits of the case are intertwined, that a Rule 12b-1 motion may only be granted where the complaint is frivolous. The district court expressly did not find that the complaint was frivolous. Alternatively, a Rule 12b-1 motion may be treated as a motion for summary judgment. In such an instance, the moving party, the defendant, has the burden of proof. In this case, the only evidence that Wynn Las Vegas presented was one case where Mr. Narcunas was a plaintiff and six cases where Tamara Thompson and the Disabled Rights Action Committee were plaintiffs. And none of those cases would serve to even indicate, let alone show, that the allegations of the complaint were not true. So that may be the case. As I understand, let's just step back just a little bit. I just have a few questions for you. The defendants were making a challenge, a constitutional challenge, that is, a case and controversy challenge. Yes, Your Honor. Standing. On standing. And they weren't arguing statutory standing. They were saying there's no case or controversy here.  It's one and the same, Your Honor. If they're intertwined, you've got Section 42 U.S.C. Well, under the state, there's statutory standing, right? Yes, Your Honor. And then there's the merits of a claim like this, which those two questions seem to merge. But there's also a different question, which is, is there a real case or controversy here for purposes of Article III? Yes, Your Honor. And that we seem to treat that question a little bit different. Well, the case law, the Supreme Court at least, in the Bennett v. Speer, the 1997 Supreme Court case, says that the standard level of establishing a case applies to standing, just constitutional standing. So at the pleading stage, there's one level. And at the trial stage, there's another level. Okay. Let me say what I'm getting at, so I'll just be real direct. Let's just assume for a moment that they could make a 12B1 challenge to constitutional standing. And they say, we realize that the allegations in the complaint, if you just take them as true, they probably are sufficient. But they say, oh, you know, we've got some other evidence to show that those allegations lack any real credibility. And so they point here, they just happen to point to the prior litigation history, correct? Yes, Your Honor. And they say, that's enough to show, to shift the burden to you to come forward with your own evidence. That's the tactic they use. A declaration of some sort or anything you might want to submit. Okay. Now, we have a recent case called DeLille. Yes, Your Honor. Right? And there's a part of DeLille that you know, I'm going to use it, do this to you, but I was really planning to raise this question with defense counsel. There's a part in DeLille where the opinion says that in that particular case there had been an evidentiary hearing in DeLille. Yes, Your Honor. Where the district court judge took evidence and everything. And one of the factors she relied upon in discrediting the plaintiff's testimony was prior litigation history. Yes, Your Honor. And the opinion in DeLille seems to say, as I understand it, that you just can't, that prior litigation history can't be a basis for discrediting. Your Honor, I'd go beyond that. I wouldn't say it just seems to say this because it's quite explicit and quite firm. Now, Judge Hunt didn't have the benefit of DeLille. No, Your Honor, he didn't. So do you think that in light of DeLille, this case should just go right back? I think that, I definitely think it should go right back, Your Honor. But I think that it was the application of 12b-1 was, basically as I see the district court's application of 12b-1, is that if the defendant just crafts their motion to dismiss as a 12b-1 motion, that there's some sort of jurisdictional or judicial wormhole that goes in. And all of a sudden, instead of having the allegations of the complaint being considered to be true, then the allegations in the defendant's motion, let alone any kind of evidence, are considered to be true. I don't read the district judges having done that. And if he had done that, we're perfectly capable of telling him how we construe what he did and so on. It seems to me that before the district judge on a motion to dismiss or a 12b-1 can require you to produce any sort of evidence beyond the allegations in the complaint, the defendant has to produce evidence of its own contesting the truth of what's alleged in the complaint. Yes, Your Honor. I think that's just standard Hornbook law. But once the defendant produces evidence in support of the 12b-1 motion to dismiss, sufficient to, if believed, defeat your allegation of jurisdiction, then it's on you to come up with your own evidence. Yes, Your Honor. So, I mean, that's just Hornbook law. So the question in this case is, has the defendant in this case put in enough evidence in a motion to dismiss to require you to come in with the evidence of your own? And you said no, and the district judge said yes. That's where we are. But I don't think we're having any fight in the abstract over how 12b-1 works. Thank you, Your Honor. Yeah. Is there the rest of my time for a moment? Let's hear from the other side and then we'll hear from you, yeah. May it please the Court. Todd Bice on behalf of Wynn Las Vegas. I tend to agree with the observations. I don't believe that there is a real dispute here about the law and its application. I think this case turns upon primarily more what the record is. The two legal points here that are, I think, controlling and really aren't subject to dispute are the fact that Article III standing is a limitation that the plaintiff has to both plead and then, if challenged on it, overcome on an evidentiary basis. Well, challenged on the basis of facts put forward by you, not just challenged in the abstract, like on a motion to dismiss under 12b-6 with, hey, whatever you say isn't enough. Correct. I agree with the Court's observations on that. Let's look at the point here is that the complaint was originally filed, right? We then filed a 12b-1 motion challenging their standing. The complaint was predicated on the vague assertion that they were disabled and they would encounter these obstacles at the Wynn. Where I disagree with counsel's argument is the question about their standing here under Article III is not intertwined with the merits. Their argument seems to hinge on the assertion that the Court can't make any sort of evidentiary determination and they do not have to come forward with any evidence at all in response to our 12b-1 motion because they claim it is intertwined with the merits. And that's just not true. There's no dispute here. We've never said that they are not disabled, that they are not eligible to bring a suit under the ADA. But they can only bring a suit for injunctive relief. They can't bring a suit for damages under this provision of the ADA. That is absolutely correct. And so the only thing that's at stake here is injunctive relief. Correct. And we know how this one of the components for actual injury, when you look at this part of it, is sort of, you know, there has to be a I forget the exact language from Lujan, but they have to show just imminence or reasonable likelihood, I guess, that they would suffer the harm in the future. Correct. Which is essentially the same inquiry under the ADA statute. Well, whether it is essentially the same inquiry or not does not mean that that makes the allegation intertwined with the merits of the case. They have to satisfy. Pardon me for just a minute.  Start the clock. You just got a couple of free minutes. Well, I. It started. Who knows. It just started now. Yeah. Anyway, not to worry. I'm sorry to interrupt, but I just noticed the clock had not started. Okay. The point, my point is, is that that does not diminish the fact that this Article 3 standing claim that we have challenged is not intertwined with the merits. Whether or not there's an ADA violation, whether or not they are the type of plaintiff who can bring that particular claim isn't at issue here. We have not challenged that at this point in time. All we've said is, is that under Lujan, you have to be able to show, the words are, imminent and real danger of encountering this obstacle again in the future. In the near future, by the way. I'm not even sure, for standing, that the word again needs to be in there. I think the only thing you need to show is that in the future you will. Now, having. I apologize. Having already been there once has a tendency to suggest that you'll be there again. But I see nothing in the statute that says, for purposes of injunctive relief, that you must already have suffered harm, which would give damages if the statute were to give damages. The only thing I see in the statute is that you have to show that you will encounter this. And, of course, then you must show that you're going to show up. Correct. And it has to be more, as the Supreme Court has said, it has to be more than the someday premise. It's insufficient to simply say, someday I will. Therefore, I've got to stand there. Lujan is a controlling case. Correct. And I think that Dalil actually sort of makes that point as well. If you look at what was alleged in Dalil, not just alleged, the actual evidence was, and I don't think that if you look at the dissent from Judge Reimer, I don't think there's a dispute about what the law is. I think there's a disagreement is really over just what inferences should be drawn from the evidence that was presented. Right. And there the plaintiff showed, not only did they have a history of being there in the past, they had a, they had concrete plans. This was, they showed much more than the speculative someday proposition that I'll encounter this again. So, well and good. But the opinion in Dalil goes on to talk about what inferences do you draw from prior litigation history. That's right. And the panel says, you don't, as I understand the case, and you can correct me if I'm wrong, but as I read that language in Dalil, it says you don't draw any inferences. Well, Judge Breyer, as that, I would have to disagree with you. All right. Well, explain to me how I should read this part of Dalil. I don't. What was the majority in Dalil saying on prior litigation history? What the Court was saying there in, with respect to that is, there was a tremendous amount of evidence in that case that had been presented by the plaintiff, both in the form of written submissions as well as live testimony. As you will recall from Judge Reimer's dissent, that was one of his criticisms, was that they considered some of the written evidence, even though there had been an evidentiary hearing. What the Court there, the majority there is saying, however, is, in the context of the judge, despite all that evidence, seemed to focus upon the litigation history as his grounds to conclude that, even though he didn't, I guess, make it express credibility ruling, because the majority talks about that extensively, but what they say is, is that, accordingly, we must be particularly cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation. That isn't the same as that it's not relevant, that it doesn't tend to show anything. I absolutely agree with you that, in this particular, what the case here is saying is, considering all of the evidence that the plaintiff put forth concerning her concrete plans to be there in the future, to simply say, okay, well, but here's this extensive litigation history, and therefore, I'm not believing any of that stuff. That is the problem, I think, that the majority is saying. Now, here's the language that concerns me in DeLille. Yes. Where the majority writes, although we afford great deference to a district court's credibility assessments, on this record, we cannot agree with DeLille's – we cannot agree that DeLille's past ADA litigation was properly used to impugn her integrity. Uh-huh. And that was my point, Your Honor. I believe that we're saying the same thing. When you have a case like DeLille where the plaintiff put forth actual evidence, specific evidence about this, and then you say, well, but the only – apparently the only impeachment, the only response to that is going to be this extensive litigation history, you can't say that that history, in and of itself, trumps her specific factual presentation that she was going to encounter these obstacles in the future. The next sentence is, accordingly, because the district court focused on DeLille's history of ADA litigation as a basis for questioning the sincerity of her intent to return to the Best Western Encina, we reject its purported adverse credibility determination. So now you take that and you look at what happened here, and what you did was you attached the complaints from six different lawsuits. I believe it's 14. Whatever it was.  The complaints, you attached some complaints. Correct. And you said to the district court, look. Look at these prior complaints that these people have been involved in, prior litigation, and that shows that basically everything they say in their complaints basically has to be discredited. That's not what it shows. Well, that's what happened. No, I disagree. But that's what the district court judge said. I don't agree with that, Judge Paez. I think what happened here in this case is very straightforward from the record. A complaint was filed. That complaint, even if we hadn't presented a factual challenge, doesn't satisfy the standing requirements, because that complaint merely says ---- Please read paragraph 12 of the complaint. Of the first complaint or the amended complaint? I was talking about the ---- I'm looking at the amended complaint, which is the one that got dismissed. Correct. Mr. Narkunis in paragraph 12 alleges that he comes to Las Vegas once a year, and he always plans on staying at the Winn. Correct. But we showed the district court, and the district court agreed that wasn't true. But wait a minute. Okay. Let's take this step by step. Okay. Without your responding to his complaint with any evidence ---- Oh, I see. All right. This taken on its own seems to me entirely sufficient. That is to say, he says plaintiff Narkunis frequently, i.e., more than once a year, travels to Las Vegas. Yes. And plans on staying at Winn Las Vegas each time he travels to Las Vegas. Right. That is enough on its face to establish that he's coming back. Now, that may or may not be true. All right. But stated only as a complaint, that for me is enough. All right. But let's ---- I understand your point. If you look at paragraphs 13 and 14, though, as well, about the other plaintiffs in this, neither of them make those assertions. How many plaintiffs need to have standing for this suit to go forward?  Okay. All right. But let's deal then ---- I agree with you. Let's deal then with Mr. Narkunis. What then was showed, however, is that Mr. Narkunis resides in Florida and that his assertion that he came every year and was going to stay at the Winn was untrue. Now, how do you show that? I believe that was set forth in the opposition or in the original motion to dismiss. Where is that? I've got the record. I've got the AR in front of me. Where is that? Where is that? Well, I apologize. I'm looking for the pleading. If I can find the page of the motion. I apologize, Your Honor. Are you looking for your motion? Yes, of our motion. I believe that discussion occurs in record at 17 through 18. Perhaps I am mistaken, though. Well, you're just talking about his allegations. I want to know what you produce in evidence to show that his allegations are not true. Well, what we presented was evidence. All right. Now, just a reminder, and I apologize. What we presented was the evidence that he does not, that he did not live in Las Vegas, that he resided in Florida, and that he was a member of this organization, and that he's, in prior litigation, said that he was an ADA tester, and that he went to these places for the purposes of checking up and commencing litigation. All right? And what is wrong with that? There is nothing wrong with that, but that certainly does create an issue about whether or not your claims that you're going to come here and stay there every year to enjoy those for purposes other than this litigation are true or not. And once that factual issue was presented to the district judge about whether or not it was true, the issue here was very simple and straightforward for the plaintiffs. Let me interject because you're now up to your 10 minutes that started late, which is not your fault. But let me say something here to see if I can get us on what I think might be a helpful track. I think we're, all of us, on the same page now. The question is whether or not, in your motion to dismiss, you have produced enough evidence that the allegation that he's coming back isn't true to oblige him to come forward with his own evidence. And the district judge held that you had presented enough evidence. He had an obligation to come forward with evidence of his own. He did not. And therefore, you went. So, but the triggering question is, have you come forward with enough evidence to show that it's likely not true that he will come back? Well, I think that the question is do you say yes or no? Do you agree with that or not? Well, I agree with it, but I would rephrase it this way. I would say, did the evidence that the defendant presented, is a reasonable inference of the evidence, because it's the only evidence, that the defendant I face an immediate, imminent injury that entitles me to seek injunctive relief. That's the question. I think that's exactly what I intended to say, although I would have left out the word baldface. Okay. Now, okay. I understand. Having established that. Yes. My question is basically the same as Judge Pius's question. The district judge did not have an opportunity to read DeLille, of course, because it hadn't been decided. And the district judge might have attached more importance to the fact that these are frequent litigators in terms of rebutting in the statement that they were going to come again than he's actually entitled to in light of DeLille. I'd be inclined to send it back to the district court to allow him to decide in light of DeLille whether you've put forward enough evidence when the only thing you've done is put forward all of these complaints that show that these are frequent filers. My point would be I don't believe that that is a necessary or appropriate considering the fact that unlike in DeLille, there is no evidence at all from the plaintiff. But the question is whether you've put forward enough evidence to make him put forward some of his own. And it may well be that now with DeLille in mind that the plaintiff will decide to come back with its own affidavits, which is a fairly straightforward and easy matter to do. Well, I don't know that that's true, whether it's so straightforward and an easy matter to do. Well, if he can, if he in good faith can say it's true, if he can't, he can't. And that's right. But the point was, is that the point was that rule, the standard under 12b-1 and his obligation to do that was known at that point in time. Well, but the district court, I don't think it's fair to the district court that he would, we can presume that he would have placed as much emphasis on the prior litigation history if he had had DeLille in front of him at the time. I don't know that that's true. Well, I don't know either. Well, I think my response to that, though, is the question that seems to me really to be, that is a legal question for you to answer, not to remand it to the district court is, is that evidence, can that evidence be considered at all? If your ruling is going to be, is it that sort of evidence, you're going to take DeLille, which I think is a good case. We also have another recent case as well. What's it called? Chambers or something? Chapman. Chapman. Which also, this whole area of ADA litigation and kind of what the ground rules are for getting these suits off the ground beyond the standing requirements, the law is beginning to, you know, settle somewhat. And, you know, Chapman is a whole other dynamic that Judge Hunt didn't have in front of him. And I would. Even did the plaintiffs have Chapman. And I would agree with the basic premise that if there, if the dispute here was whether or not their evidence was enough to get over our challenge, that we'd have a different argument. Well, they didn't present any of it. That's right. Because they, well, they focused on the merger. Exactly. And that's. They may have had the wrong legal assessment. Well, they're not consequences to that. Well, I'm not. From our standpoint. Well, our law has evolved a little bit. Speaking only for myself. Yes. Were I in the position of the district court in this circumstance reading DeLille and reading DeLille's caution against focusing unduly on the fact that these are frequent filers. I would say that's probably not enough by itself to force the other side to come in. You need more. Now, you might have been able to get a little more with a quick deposition or so. He's taking what we call, what we call in the district court jurisdictional discovery. Correct. Your Honor, I want a deposition because I. I. He would have given it to you and limited it just to jurisdictional discovery. I actually don't disagree with all of your points except for this. Had the plaintiff submitted any evidence. The plaintiff is in possession of this evidence. But the question is, when is the plaintiff's obligation triggered? When the plaintiff is challenged on those assertions by evidence. There was no objection, by the way, to this evidence submitted by us. The plaintiff lodged no objection, said it's inadmissible, said anything about it. They just said they got the law wrong. They said we don't have to submit evidence. I mean, let's be candid about what transpired here. I mean, they just got the law wrong, and now they're saying. I'd like to talk and then you can talk. I apologize, Your Honor. Don't take this as a rebuke. I mean, you're excited. That's okay. You're doing fine. They might have actually got the law right, perhaps by accident, anticipating the little. Well, I understand your point, but they have the evidence to submit at that point in time. I mean, this is subject matter jurisdiction. You know, this is subject matter jurisdiction is never presumed. And in fact, the whole point about getting this stuff resolved early is to avoid We're not talking about subject matter jurisdiction. Well, we're talking about standing, which is part of subject matter jurisdiction. My point is, is that the whole point about getting these issues resolved early on is so that we don't incur a lot of unnecessary expense if it turns out that the plaintiff doesn't have standing to bring the suit. Got it. Okay. Thank you very much. And I apologize for my extension. No apology needed. No, you're being vigorous in your advocacy, and we were talking over each other. No apology needed. Why don't we give you two minutes, and then we're done. Thank you, Your Honor. First of all, this is a FedEx I received from Mr. Arconis with his affidavit in it. And I could have filed it. I decided not to, because the district court was being asked to apply 12b-1 in a way that was inappropriate in my estimation. I don't think it really turns on the Dalil aspect. It is a factor of the attempt to use 12b-1 as a way of inverting the standards and burdens of proof for establishing arguments. And then my client wanted me to file it, and I didn't, because I wanted this Court to address the application of 12b-1 that Wynn Las Vegas was urging the Court to take. So I don't think that the new case law of Dalil, which really was ‑‑ What if we disagreed with your legal assessment there? You're not the first, Your Honor. You may be snatching defeat from the jaws of victory. And gave the defendant the delay that is often the object of defendants in 88 Title III cases. I know. But the overall objective was to present to this Court this application of 12b-1 in reversing the burdens of proof. And as far as what needs to be shown, one thing that hasn't been mentioned here is the deterrent aspect of standing. And Mr. Narkunis has been talked about a lot, but another plaintiff, another appellant here is the Disabled Rights Action Committee. They have members who are residents of Las Vegas. Let me ask you this, and then we'll let you sit down. If we were to conclude in light of Dalil that there is a serious question whether the defendants have presented enough evidence in support of their 12b-1 motion to require you to respond with evidence of your own, if that's our conclusion, do you want a remand for the District Court to consider that? And if the District Court decides that there's enough evidence presented by the defendant for you then to present your own evidence in opposition, or do you not want that? Your Honor, that would be fine. We might want that. But the real purpose of this litigation was there are all sorts of tactics being taken to stop ADA litigants from being in a case. I understand that. And this was, and I talked with other ADA litigators, and, you know, like, they're doing that? Oh, yeah, they did that over here. And one of the big objectives of this litigation strategy that I employed was to seek a review by a circuit court of what is being done in the District Courts. Well, I guess that's what we're doing. Thank you. Thank you. Thank both sides for your argument. And I repeat to Mr. Pisanelli. Oh, I'm sorry. Not to worry. We're doing fine. The case is Narcones v. Wynn, Las Vegas, submitted for decision.
judges: Hall, Fletcher W. , Paez